JACKSON *v.* ELI.

---

# JACKSON *v.* ELI.[*]

---

DEEDS; LIGHT AND AIR; INJUNCTIONS.

1. Where the owner of a building lot, one half of which was improved by a brick dwelling and the other half by a small frame dwelling about

---

[*]*Easements of Light and Air.*—As to American law relating to easements of light, air, and prospect, including express grant or reservation of such easements, see the full presentation of the authorities in editorial notes to *Case* v. *Minot,* 22 L. R. A. 536: *Jones* v. *Millsaps,* 23 L. R. A. 158.

20 feet in height and standing about 21 feet from the nearest wall of the other house, conveyed the former half by a deed containing a covenant not to obstruct the windows of the house on it and not to interfere with the enjoyment of the window lights as they then existed, and to permit ingress upon the adjoining land for the purpose of repairs, such covenant is not to be construed as a dedication of the 21-foot strip of land between the two houses to the common use of the occupants of both for all time, or to the exclusive use of the brick dwelling so conveyed; nor is such covenant to be construed as requiring the maintenance of the existing condition of things in perpetuity, or that the frame building was never to be replaced by a larger structure or one of greater height than 20 feet; or that there was to be no occupation whatever of any part of the intervening strip of land for the erection of any structure; but a reasonable construction of such covenant is that a sufficient portion of such strip of land should be left vacant so that the light of the owner of the brick house and his right of access for repair should not be obstructed or substantially impaired.

2. Under such circumstances, where the owner of the brick dwelling containing such windows sought an injunction against the owner of the land, to prevent him from obstructing the windows by replacing the frame building by a new structure, a decree was reversed which enjoined the defendant from erecting any building at a distance less at any point than 3 feet, 6 inches from the complainant's house, and which was based upon the testimony of the defendant and two architects that such a space would be ample for light and air between the buildings; and there being no sufficient testimony upon which to base a decree, the cause was remanded in order that the lower court might determine either by reference to the auditor, or in some other way, what amount of vacant land adjoining the complainant's house was necessary in order to secure to him his rights under such a covenant.

No. 1320.    Submitted December 2, 1903.    Decided January 19, 1904.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia in a suit to enjoin the erection of buildings upon certain land.    *Reversed.*

The COURT in the opinion stated the case as follows:

On May 28, 1860, Richard Pettit, being then the owner of lot No. 111, in Beatty and Hawkins' addition to the city of Georgetown, now a part of the city of Washington, which lot

fronted 96 feet on the street now known as O street, conveyed
the east half thereof, fronting 48 feet on O street and improved
by a three-story brick dwelling house, to Richard P. Jackson, a
member of the bar of this District. The deed of conveyance
contained this covenant:

"The said parties of the first part (Richard Pettit and his
wife), for themselves, their heirs, executors, and administra-
tors, by these presents covenant, promise, and agree to and with
the party of the second part, his heirs and assigns, not to ob-
struct the windows lying and being in the west or gable-end
walls of the said three-story brick house situated upon the said
described premises, but that the said party of the second part,
his heirs and assigns, shall use and enjoy the said window lights
in perpetuity forever, as they are now used and enjoyed, and
that the said party of the second part, his heirs and assigns,
shall and may at any time and at all times enter upon the lot
lying west of the said three-story brick house for the purpose
of repairing his windows, walls, or lightning rod belonging to
the said building."

Richard P. Jackson went to reside in the house, and contin-
ued to reside there until his death on August 14, 1891; and it
has since that time continued to be the home of his family. His
right and title have become vested in the appellants,—the legal
title in Lewis Jackson, trustee, and the beneficial ownership in
the other appellants.

Subsequently to the conveyance to Jackson, Pettit conveyed
to other parties the west half of the same lot No. 111, which had
on it a small frame structure about 20 feet in height, about 20
feet in width, and standing about 21 feet west from the west
wall of the Jackson house and about 7 feet from the side street
(Frederick, now 34th street) ; and his right and title to this
west part of the lot have, by divers mesne conveyances, become
vested in the appellee, Daniel E. Eli.

The situation and condition of the whole property remained
practically unchanged from the time of Jackson's purchase, in
1860, down to April of 1900. In April of 1900 Eli com-
menced to remove the frame structure on his west half of the

lot, and commenced the erection of several buildings thereon in such close proximity to the Jackson house that, if they were allowed to go on, the necessary result would have been to close the windows in the west wall of that house, to deprive its occupants of the light and air which they received through those windows, and which were necessary for the proper enjoyment of the house, and to deprive them of their right under the covenant with Pettit to enter upon the west half of the lot for the purpose of repairing the windows, walls, and lightning rod belonging to said building. Thereupon the appellants filed their bill in equity in the supreme court of the District to enjoin the appellee, Eli, from erecting any buildings upon his west half other than as existed at the date of the deed from Pettit to Jackson, in 1860. This bill was filed on April 27, 1900.

A restraining order was issued in accordance with the prayer of the bill, and it seems to have been followed in due time by an injunction *pendente lite,* the terms of which do not appear in the record before us. On September 3, 1902, Eli answered the bill, and in his answer admitted that at the time of the institution of the suit he was about to erect buildings on the west half of the lot that would have closed the windows of the complainants in the building on the east half of the lot and prevented the complainants and all other persons from entering upon the west half of the lot for the purpose of the repair of the windows, walls, and lightning rod of the complainants. He admitted also that, under the covenant between Pettit and Jackson, the owners of the east half of the lot were entitled to a reasonable use of so much of the west half as might be necessary for light and air, and for ingress thereon for the purpose of repair, as provided in the covenant; but he claimed that it would be inequitable to require him to leave the whole space between the Jackson house and the site of the old frame structure vacant and unoccupied; that this was not contemplated by the covenant and was not required for the beneficial enjoyment of the property of the complainants.

Testimony was taken on both sides. That on behalf of the complainants was directed mainly toward showing the condi-

tions that had existed from the year 1860 to the year 1900. The substantial part of the testimony for the defendant was his own statement that he had no actual knowledge of the covenant be-tween Pettit and Jackson until he was advised of it by this suit, and the statements of two architects to the effect that a space of 3 feet and 6 inches, or even less, would be ample space for light and air between the buildings if they were erected on that lot.

A decree was rendered to the effect: (1) That the injunction previously granted should be dissolved; (2) that the defendant should recover from the complainants and their sureties on the injunction bond or undertaking such damages, if any, as were occasioned by the wrongful suing out of the injunction; (3) that the defendant should be perpetually enjoined from erecting on the west half of the lot any building at a distance less at any point than 3 feet and 6 inches from the Jackson house; (4) that the complainants should recover costs from the defendant.

This decree, although in great part apparently in favor of the complainants, was substantially in favor of the defendant; and the complainants have accordingly appealed from it.

*Mr. John Ridout* and *Mr. Jesse H. Wilson* for the appellants.

*Mr. J. J. Darlington* and *Mr. James B. Archer, Jr.,* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The claim of the complainants is undoubtedly too broad. They virtually claim a prospect, not the free access of light and air. They claim the perpetuation of existing conditions, when such perpetuation was not within the contemplation of the par-ties to the covenant. There is nothing in the covenant to sus-tain this claim. Neither in express terms nor by necessary im-plication does the covenant dedicate the strip of land between the Jackson house and the old frame building to the common use of the occupants of the two buildings for all time. Much

less is there such a dedication for the exclusive use of the owners of the Jackson building. There is nothing in the covenant from which it can reasonably and fairly be inferred that the existing condition of things should be maintained in perpetuity; that the frame building was never to be replaced by a larger structure; that no structure of a greater height than 20 feet was to be built upon the premises; that there was to be no occupation whatever of any part of the intervening lot for the erection of any structure. It would be an unreasonable construction of the covenant that would warrant such an inference.

Of course, it would have been competent for the parties to the covenant to stipulate for the maintenance of existing conditions in perpetuity; but such stipulation is not to be inferred from a covenant not to obstruct windows, not to interfere with the enjoyment of window lights as they then existed, and to permit ingress upon the land for the purpose of certain repairs. Such a dedication of vacant land to common use as would require it practically to remain vacant forever is not usually made in that way; and we see no reason for any construction that would give this covenant such far-reaching effect.

The complainants are entitled to the letter of the covenant reasonably and fairly construed,—to unobstructed windows, to the enjoyment of light and air through these windows unimpaired and substantially the same as when the easement was granted, and to the right of ingress upon the property for the purpose of repair. This right of the complainants would not only have been impaired, but it would have been actually destroyed by the course contemplated in the first instance to be pursued by the defendant; and this is candidly conceded by the defendant, who at the time was evidently unaware of the existence and nature of the covenant, but who, of course, was chargeable with constructive notice of it. The injunction, therefore, was properly sued out, and was properly granted, although perhaps too broad in its scope.

That to which the complainants are entitled is not the maintenance in perpetuity of the pre-existing condition of the land,

but that their light and their right of access for a specified purpose should not be obstructed or substantially impaired. Unquestionably, this would necessitate that a sufficient portion of the land adjoining the house should be left vacant. But it is substantial impairment of their right, not the slight and unimportant impairment that would necessarily follow from any improvement of the premises, against which the complainants are entitled to be protected.

Two witnesses have been produced by the defendant, architects by profession, who testify that a space of 3 feet and 6 inches between the buildings would be ample for light and air. But if all the architects in Washington should swear that a space of 3 feet and 6 inches would afford substantially the same light and air for windows as a space of 21 feet, this court would not believe them. The witnesses, however, have not so sworn. They have only sworn to a custom or usage among builders, and the requirements of the building regulations of the city of Washington, neither of which have anything whatever to do with the covenant now before us for construction.

There is nothing in the record before us by which we can determine to what proximity to the Jackson house the defendant may build upon his own lot without substantially impairing the right reserved to the complainants by the covenant. There is both the matter of the substantial impairment of light and the matter of substantial interference with the right of access for the purpose of repair to be considered; and there is no testimony in the case, at least no sufficient testimony, upon which to base a decree that would secure the just rights of both parties. Either by a reference to the auditor of the court, or in some other way, it should be determined what amount of vacant land is necessary to the west of the Jackson house in order to secure to the complainants the unobstructed right to light and air and access to the land to which they are entitled before a decree can properly be entered.

We think that there was error in the decree appealed from, for which it must be reversed, with costs. The cause will be re-

manded to the Supreme Court of the District, with directions to vacate that decree, and for such further proceedings as may be right and just, in accordance with law and in conformity with this opinion. And it is so ordered. ·*Reversed.*